UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM H. VON EBERSTEIN, JR. AND TERESA BRELAND VON EBERSTEIN** | **CIVIL ACTION NUMBER:** |
| **VERSUS** | |
| **DAIICHI SEIYAKU COMPANY, LIMITED; DAIICHI SANKYO, INC.; DAIICHI MEDICAL RESEARCH, INC.; DAIICHI PHARMA HOLDINGS, INC.; AND DAIICHI PHARMACEUTICAL CORPORATION** | **JUDGE**<br><br>**MAGISTRATE JUDGE** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT**

The Complaint of **William H. von Eberstein, Jr.** and **Teresa Breland von Eberstein**, residents of and domiciled in St. Tammany Parish, Louisiana, respectfully represent:

1.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because complete diversity exists between the parties, as set forth below, Plaintiffs are citizens of states that are different from the states where the Defendants are incorporated and have their principal places of business.

2.

Venue is proper within this District pursuant to 28 U.S.C. § 1391 because it is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(c).

3.

This is an action for personal injury and loss of consortium against Defendants who were responsible for the prescription drug, AZOR®, a high blood pressure medication used by the injured Plaintiff, as set for the below, that proximately caused the Plaintiff to sustain injuries and damages.

4.

The following parties are made Defendants herein:

A. **Daiichi Seiyaku Company, Limited** is a foreign corporation organized under the laws of the State of New Jersey with its principal state of domicile in New Jersey but which is doing substantial business in Louisiana and within this District;

B. **Daiichi Sankyo, Inc.** is a foreign corporation organized under the laws of the State of Delaware, authorized to do and doing substantial business in the State of Louisiana and in this District;

C. **Daiichi Medical Research, Inc.** is a foreign corporation organized under the laws of the State of Delaware with its principal state of domicile in New Jersey but which is doing substantial business in Louisiana and within this District;

D. **Daiichi Pharma Holdings, Inc.** is a foreign corporation organized under the laws of the State of Delaware with its principal state of domicile in New Jersey but which is doing substantial business in Louisiana and within this District; and

E. **Daiichi Pharmaceutical Corporation** is a foreign corporation organized under the laws of the State of Delaware with its principal state of domicile in New Jersey but which is doing substantial business in Louisiana and within this District.

5.

Upon information and belief, Defendant, Daiichi Seiyaku Company, Limited, is a New Jersey corporation, having a principal place of business at 5 Ogawara-Cho, Kisshoin, Minami-Ku, Kyoto 601-8391 Japan and, as part of its business, Daiichi Seiyaku Company, Limited is involved in the research, development, sales and marketing of pharmaceutical products including AZOR®.

6.

Upon information and belief, Defendant, Daiichi Sankyo, Inc., is a Delware corporation, having a principal place of business at Two Hilton Court, Parsippany, New Jersey  07054 and, as part of its business, Daiichi Sankyo, Inc. is involved in the research, development, sales and marketing of pharmaceutical products including AZOR®.

7.

Upon information and belief, Defendant, Daiichi Medical Research, Inc. is a Delware corporation, having a principal place of business at Two Hilton Court, Parsippany, New Jersey 07054 and, as part of its business, Daiichi Medical Research, Inc. is involved in the research, development, sales and marketing of pharmaceutical products including AZOR®.

8.

Upon information and belief, Defendant, Daiichi Pharma Holdings, Inc. is a Delware corporation, having a principal place of business at Two Hilton Court, Parsippany, New Jersey 07054.  As part of its business, Daiichi Pharma Holdings, Inc. is involved in the research, development, sales and marketing of pharmaceutical products including AZOR®.

9.

Upon information and belief, Defendant, Daiichi Pharmaceutical Corporation is a Delware corporation, having a principal place of business at Two Hilton Court, Parsippany, New Jersey 07054 and, as part of its business, Daiichi Pharmaceutical Corporation is involved in the research, development, sales and marketing of pharmaceutical products including AZOR®.

10.

Upon information and belief, at relevant times, Defendants were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce and into the State of Louisiana, either directly or indirectly through third parties or related entities, its products, including AZOR®.

12.

At relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the State of Louisiana, which included but was not limited to selling, marketing and distributing its products including AZOR® in Louisiana and within this District.

13.

Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the State of Louisiana and Defendants derived and derive substantial revenue from interstate commerce.

14.

Upon information and belief, Defendant, Daiichi Seiyaku Company, Limited , is a company domiciled in Japan and is the parent/holding company of Defendants, Daiichi Sankyo, Inc.; Daiichi Medical Research, Inc.; Daiichi Pharma Holdings, Inc. and Daiichi Pharmaceutical Corporation.

15.

Upon information and belief, at all relevant times, Defendant, Daiichi Seiyaku Company, Limited, exercised and exercises dominion and control over Defendants, Daiichi Sankyo, Inc.; Daiichi Medical Research, Inc.; Daiichi Pharma Holdings, Inc. and Daiichi Pharmaceutical Corporation.

16.

Upon information and belief, at all relevant times, Defendant, Daiichi Seiyaku Company, expected or should have expected that its acts would have consequences within the United States of American and the State of Louisiana, derived and derive substantial revenue from interstate commerce.

17.

Upon information and belief, at all relevant times, Defendants, including Defendant Daiichi Seiyaku Company, have transacted and conducted business in the State of Louisiana and/or contracted to supply goods and services within the State of Louisiana and these causes of action have arisen from same.

18.

Upon information and belief, at all relevant times, Defendants, including Defendant, Daiichi Seiyaku Company, committed tortious acts within the State of Louisiana and within this District, out of which act(s) these causes of action arise.

19.

At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed AZOR® for treatment of high blood pressure.

20.

AZOR® received FDA approval on September 26, 2007 to treat high blood pressure.

21.

In approximately late 2008, Plaintiff was prescribed AZOR® by his internal medicine physician, Dr. Patricia Guidry, at Ochsner Clinic in Covington, Louisiana.

22.

Prior to applying for and obtaining approval for AZOR®, Defendants knew or should have known that AZOR® use in humans was associated with and/or would cause intestinal problems known as sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries.

23.

Defendants failed to adequately conduct complete and proper testing of AZOR® prior to and following the submission of its New Drug Application for AZOR®.

24.

It is alleged that Defendants knew or reasonably should have known, prior to their initial marketing and sale of AZOR®, that the drug's use in humans was associated with and/or would cause intestinal problems known as sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries.

25.

From the date of approval to market AZOR®, Defendants manufactured, distributed, marketed and sold AZOR without adequate warnings to Plaintiff and his prescribing physicians indicating that AZOR is associated with and/or could cause intestinal problems known as sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other complications in patients who use it.

26.

Defendants failed to disclose to Plaintiff or his prescribing physicians, through the prescribing information for AZOR or otherwise, about the risk of developing sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries further rendered warnings for this medication inadequate when using the drug.

27.

Upon information and belief, Defendants ignored the association between the use of AZOR® and the risk of developing intestinal problems known as sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss and malnutrition.

28.

On July 3, 2013, the FDA informed the public that their use of the high blood pressure medication AZOR® may be associated with an increased risk of sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss and malnutrition in patients taking AZOR® for months to years after drug initiation. The AZOR® label was then changed to reflect this information in the Warnings and Precautions section as well as the patient Medication Guide to include information regarding the risk of Enteropathy.

29.

As a result of using Defendants' AZOR®, Plaintiff was caused to suffer bodily injury including sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss and malnutrition and was thus caused to sustain severe and permanent personal injuries, pain, suffering and mental anguish and other damages as outline hereinafter.

30.

The injuries and damages sustained by Plaintiffs were caused or substantially contributed to by Defendants' AZOR® and the Defendants' wrongful conduct.

31.

The product warnings for AZOR® in effect during the time period Plaintiffs used AZOR® were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians, including Plaintiff's physicians, as well as Plaintiff of the intestinal problems associated with the drug.

32.

Defendants did not provide adequate warnings to Plaintiffs' doctors, Plaintiffs, the health care community and the general public about the increased risk of serious adverse events that are described herein.

33.

Had Plaintiffs been adequately warned of the potential life-threatening side effects of Defendants' AZOR®, Plaintiffs would not have purchased or taken AZOR® and would have chosen to request other treatments or prescription medications.

34.

By reason of the foregoing, Plaintiff has developed serious and dangerous side effects including sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss and malnutrition as well as other severe and personal injuries in which Plaintiff suffered physical pain and mental anguish, including diminished enjoyment of life, any and all life complications caused by Plaintiff's intestinal problems, all past, present and future.

35.

Plaintiffs became aware of the connection between AZOR® and the illness for which he is suing after the FDA issued its warning on July 3, 2013.

## LIABILITY UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

36.

Under the Louisiana Products Liability Act, Plaintiffs show that intestinal problems known as sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries are the direct and proximate result of breaches of obligations owed by Defendants to Plaintiffs, including defects in design, marketing, manufacture, distribution, instructions and warnings by Defendants, which breaches and defects are listed more particularly, but not exclusively, as follows:

- A. Failure to instruct and/or warn of sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries;

- B. Failure to adequately instruct and/or warn healthcare providers, including those healthcare providers who prescribed AZOR® to William H. von Eberstein, Jr. of the risk of sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries;

C. Manufacturing, producing, promoting, formulating, creating and/or designing AZOR® without adequately testing it;

D. Failing to provide adequate warning of the dangers associated with AZOR®;

E. The defects in designing, formulating, researching, developing, manufacturing, marketing, promoting and selling a medication when it knew or reasonably should have known of the propensity to cause sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries;

F. Its liability under the Louisiana Products Liability Act as a result of its design, development, manufacture, marketing and sale of a medication which is defective and unreasonably dangerous for the risk of developing sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries;

G. The continued production and sale of this medication given the propensity of this medication to cause sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss, malnutrition and other injuries;

H. Providing inaccurate labeling and inadequate warnings and instructions;

I. Utilizing testing methods which were not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented;

J. Other breaches and defects which may be shown through discovery or at trial; and

K. Generally, the failure of Defendants to act with the required degree of care commensurate with the existing situation.

## **LIABILITY - FAILURE TO WARN**

37.

Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced AZOR® into the stream of commerce, and in the course of same, directly advertised or marketed AZOR® to consumers or persons responsible for consumers, and therefore, had a duty to both Plaintiff directly and Plaintiff's physician to warn of risks associated with the use of the product.

38.

Defendants had a duty to warn of adverse drug reactions, which they know or have reason to know can be caused by the use of AZOR® and/or are associated with the use of AZOR®.

39.

The AZOR® manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after Defendants knew or should have known of the risks of sprue-like enteropathy from AZOR® use, they failed to provide adequate warnings to consumers of the product, including Plaintiff and Plaintiff's physicians, and continued to promote AZOR®.

40.

Due to the inadequate warning regarding sprue-like enteropathy, AZOR® was in a defective condition and unreasonably dangerous at the time that it left the control of Defendants.

41.

Defendants' failure to adequately warn Plaintiff and Plaintiff's prescribing physicians of a sprue-like enteropathy risk prevented Plaintiff's prescribing physicians and Plaintiff from correctly and fully evaluating the risks and benefits of AZOR®.

42.

Had Plaintiff been adequately warned of the potential life-threatening side effects of Defendants' AZOR®, Plaintiff would not have purchased or taken AZOR® and could have chosen to request other treatments or prescription medications.

43.

Upon information and belief, had Plaintiff's prescribing physicians been adequately warned of the potential life threatening side effects of Defendants' AZOR®, Plaintiff's prescribing physicians would have discussed the risks of sprue-like enteropathy and AZOR® with Plaintiff and/or would not have prescribed it.

## **LIABILITY – DEFECTIVE DESIGN**

44.

AZOR® was expected to, and did, reach the intended consumers, handlers, and persons coming into contact with the product without substantial change in the condition in which it was produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

45.

At all times relevant, AZOR® was manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous condition, which was dangerous for use by the public, and, in particular, by Plaintiff.

46.

AZOR® as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants was defective in design and formulation in that when it left the hands of the manufacturers and/or suppliers the foreseeable risks exceeded the alleged benefits associated with the design and formulation of AZOR®.

47.

AZOR® as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants was defective in design and formulation, because when it left the hands of Defendants' manufacturers and suppliers it was unreasonably dangerous and was also more dangerous than the ordinary consumer would expect.

48.

At all times herein mentioned, AZOR® was in a defective condition and was unsafe, and Defendants knew and had reason to know that the product was defective and inherently unsafe, especially when AZOR® was used in a form and manner instructed and provided by Defendants.

49.

Defendants had a duty to create a product that was not unreasonably dangerous for its normal, common, intended use.

50.

At the time of Plaintiffs' use of AZOR®, it was being used for its intended purpose, and in a manner normally intended, namely for the treatment of high blood pressure.

51.

Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed a defective product that caused an unreasonable risk to the health of consumers, and to Plaintiffs in particular, and Defendants are therefore liable for the injuries and damages sustained by Plaintiffs.

52.

At the time Defendants' product left their control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the

reasonably anticipated or intended function of AZOR®. This was demonstrated by the existence of other high blood pressure medications which had a more established safety profile and a considerably lower risk profile.

53.

Plaintiffs could not, by the reasonable exercise of care, have discovered AZOR®'s defects and perceived its danger.

54.

The defects in Defendants' product were substantial and contributing factors in causing Plaintiff's injuries.

55.

Due to the unreasonably dangerous conditions of AZOR®, Defendants are liable to Plaintiffs.

## LIABILITY - BREACH OF EXPRESS WARRANTY

56.

Defendants expressly warranted that AZOR® was safe for its intended use and as otherwise described in this Complaint. AZOR® did not conform to these express representations, including, but not limited to, the representation that it was safe and the representation that it did not have high and/or unacceptable levels of life-threatening side effects like sprue-like enteropathy, that it would improve health, maintain health and potentially prolong life.

57.

The express warranties represented by Defendants were a part of the basis for Plaintiffs' use of AZOR® and Plaintiffs relied upon these warranties in deciding to use AZOR®.

58.

At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the AZOR® was to be used, and warranted same to be in all respects safe, effective and proper for such purpose.

59.

AZOR® does not confirm to these express representations because AZOR® is not safe or effective and may produce serious side effects, including among other things sprue-like enteropathy, degrading Plaintiff's health and shrinking his life expectancy.

60.

As a result of the foregoing breach of express warranty, Plaintiffs were caused to suffer sprue-like sprue-like enteropathy, including severe, chronic diarrhea with substantial weight loss and malnutrition, as well as other severe and personal injuries which were permanent and lasting in nature including physical pain and mental anguish including diminished enjoyment of life, as well as medical treatment, monitoring and/or medications.

## **DAMAGES**

61.

As a result of the aforementioned breach of obligations to Plaintiffs, Plaintiff William H. von Eberstein, Jr. suffered the following items of damage, all past, present and future, for which he is entitled to be compensated by Defendants, *in solido*, in an amount which is just and reasonable:

    A.    Medical and related expenses;

    B.    Physical injury and disability;

    C.    Physical pain and suffering;

    D.    Mental anguish and distress;

  E. Loss of earnings;

  F. Impairment to earning capacity; and

  G. Loss of enjoyment of life.

62.

Plaintiff is legally married to Teresa Breland von Eberstein, and as such, is entitled to the comfort, enjoyment, society and services of one another.

63.

Plaintiffs show that as a direct and proximate result of the negligence and fault of Defendants, Plaintiff Teresa Breland von Eberstein have sustained the following non-exclusive list of damages (all past, present and future) for which she is entitled to be compensated by Defendants, *in solido*, in an amount which is just and reasonable:

  A. Mental anguish and distress;

  B. Loss of consortium and society; and

  C. Other items of damage which may be shown through discovery or at trial.

64.

By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000, together with interest, costs of suit and all such other and further relief as the Court deems proper.

  WHEREFORE, Plaintiffs, William H. von Eberstein, Jr. and Teresa Breland von Eberstein, demand judgment against Defendants, Daiichi Seiyaku Company, Limited; Daiichi Sankyo, Inc.; Daiichi Medical Research, Inc.; Daiichi Pharma Holdings, Inc.; and Daiichi Pharmaceutical Corporation, on each of the above-referenced claims and causes of action and as follows:

A. Awarding compensatory damages to Plaintiffs for past and future damages as outlined above and as provided by law;

B. Awarding interest from date of judicial demand until paid;

C. Awarding Plaintiffs the costs of these proceedings; and

D. Awarding such other and further relief as this Court deems just and proper.

By Attorneys:

*s/John W. deGravelles*

**JOHN W. deGRAVELLES** (04808)
J. NEALE deGRAVELLES (29143)
STEPHANIE B. HULETT (33193)
deGravelles, Palmintier, Holthaus & Frugé, L.L.P.
618 Main Street
Baton Rouge, Louisiana 70801-1910
(225) 344-3735 • Fax: (225) 336-1146
jdegravelles@dphf-law.com
ndegravelles@dphf-law.com
shulett@dphf-law.com

**CHRISTOPHER L. COFFIN** (27902)
Pendley, Baudin & Coffin, L.L.P.
1515 Poydras Street, Suite 1400
New Orleans, LA  70112
(504) 355-0086 • Fax: (504) 523-0699
ccoffin@pbclawfirm.com

**REQUESTS FOR SUMMONS WILL BE ISSUED AS TO:**

**Daiichi Seiyaku Company, Limited**
through its registered agent:
Daiichi Pharmaceutical Corp
400 Kelby Street
Fort Lee, New Jersey  7024

**Daiichi Sankyo, Inc.**
through its registered agent:
National Registered Agents, Inc.
5615 Corporate Boulevard, Suite 400B
Baton Rouge, LA  70808

**Daiichi Medical Research, Inc.**
through its registered agent:
National Corporate Research, Ltd.
14 Scenic Drive
Dayton, New Jersey  08810

**Daiichi Pharma Holdings, Inc.**
through its registered agent:
Chiltanu Husitimito
11 Phillips Parkway
Montvale, New Jersey  07645

**Daiichi Pharmaceutical Corporation**
through its registered agent:
National Corporate Research, Ltd.
14 Scenic Drive
Dayton, New Jersey  08810